UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JONATHAN WILSON,
PLAINTIFF.

COMPLAINT
CIVIL ACTION NO. ___________

—V.—

CONNECTICUT DEPARTMENT OF CORRECTIONS,
ROLLIN COOK, ANGEL QUIROS, CHERYL CEPELAK,
ANTONIO SANTIAGO, WILLIAM MULLIGAN, DAVID
MAIGA, KAREN MARTUCCI, ZELYNETTE CARON,
ROGER BOWLES, C.S. MANGIAFICO, LT. OULLETTE,
LT. GRIMALDI, C.O. LEONE, C.O. LAPREY, C.O. CANALES,
C.O. RAMIREZ, C.O. CIEBOTER, C.O. JOHN DOE.
INDIVIDUALLY AND IN THEIR OFFICAL CAPACITIES;
DEFENDANTS.

## I. JURISDICTION & VENUE

1) THIS IS A CIVIL ACTION AUTHORIZED BY 42 U.S.C. SECTION 1983 TO REDRESS THE DEPRAVATION, UNDER COLOR OF STATE LAW, OF RIGHTS SECURED BY THE CONSTITUTION OF THE UNITED STATES, SPECIFICALLY THE FIRST AND FOURTEENTH AMENDMENTS FOR VIOLATING PLAINTIFFS FREEDOM OR SPEECH AND RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVENCES. THE EIGHTH AND FOURTEENTH AMENDMENTS FOR VIOLATING RELIGIOUS FREEDOM. THE FIFTH AND FOURTEENTH FOR PROPERTY RIGHTS, AND THE FOURTEENTH AMENDMENT FOR ~~PACEDURAL~~ PROCEDURAL AND SUBSTANTIVE DUE PROCESS OF LAW PROVISIONS. THE COURT HAS JURISDICTION UNDER 28 U.S.C. SECTION 1331 AND 1343(a)(3). PLAINTIFF SEEKS DECLARATORY RELIEF PURSUANT TO 28 U.S.C. SECTION 2201 AND 2202. PLAINTIFF CLAIMS FOR INJUNCTIVE RELEIF ARE AUTHORIZED BY 28 U.S.C. SECTION 2283 AND 2284 AND RULE 65 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

2.) THE HARTFORD DISTRICT OF CONNECTICUT IS AN APPROPRIATE VENUE UNDER 28 U.S.C. SECTION 1391 (B)(2) BECAUSE IT IS WHERE THE EVENTS GIVING RISE TO THIS CLAIM OCCURED.

## II. PLAINTIFFS

3.) PLAINTIFF, JONATHAN WILSON, IS AND WAS AT ALL TIMES MENTIONED HEREIN A PRISONER OF THE STATE OF CONNECTICUT IN THE CUSTODY OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS. HE IS CURRANTLY CONFINED IN NORTHERN CORRECTIONAL INSTITUTION IN SOMERS CONNECTICUT.

## III DEFENDANTS.

4.) THE CONNECTICUT DEPARTMENT OF CORRECTIONS (DOC) IS CHARGED WITH THE CUSTODY, CARE, DISCIPLINE, TRAINING, AND TREATMENT OF ADULT OFFENDERS COMMITTED TO STATE PRISONS.

5.) DEFENDANT, ROLLIN COOK, IS AND WAS THE COMMISSIONER OF CONNECTICUT'S DEPARTMENT OF CORRECTIONS. HE IS AND WAS, LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF THE DEPARTMENT AND EACH INSTITUTION UNDER ITS JURISDICTION, INCLUDING CARL ROBINSON CORRECTIONAL INSTITUTION AND NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

6.) DEFENDANT, ANGEL QUIROS WAS THE DEPUTY COMMISSIONER OF OPERATIONS FOR CONNECTICUTS DEPARTMENT OF CORRECTIONS DURING THE INCIDENT WHICH THE CLAIM ORIGINATED AND IS NOW COMMISSIONER OF CONNECTICUTS DEPARTMENT OF CORRECTIONS. HE IS LEGALLY RESPONSIBLE FOR THE OVERALL OPERATION OF THE DEPARTMENT AND EACH INSTITUTION UNDER ITS JURISDICTION, INCLUDING CARL ROBINSON CORRECTIONAL INSTITUTION AND NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

7.) DEFENDANT, CHERYL CEPELAK, IS THE DEPUTY COMMISSIONER OF ADMINISTRATION FOR CONNECTICUTS DEPARTMENT OF CORRECTIONS AND IS LEGALLY RESPONSIBLE FOR EMPLOYEE'S BEHAVIOR AND CONDUCT. SHE IS LEGALLY RESPONSIBLE FOR THE OVERALL ACTIONS OF EMPLOYEES WITHIN THE DEPARTMENT AND EACH INSTITUTION UNDER ITS JURISDICTION INCLUDING CARL ROBINSON CORRECTIONAL INSTITUTION AND NORTHERN CORRECTIONAL INSTITUTION. SHE IS BEING SUED IN HER INDIVIDUAL AND OFFICAL CAPACITY.

8.) DEFENDANT, WILLIAM MULLIGAN WAS THE DISTRICT ADMINISTRATOR OF DISTRICT ONE FOR THE CONNECTICUT DEPARTMENT OF CORRECTIONS AND IS NOW DEPUTY COMMISSIONER OF OPERATIONS FOR CONNECTICUTS DEPARTMENT OF CORRECTIONS. HE IS LEGALLY RESPONSIBLE FOR THE OVERALL OPERATIONS OF THE DEPARTMENT AND EACH INSTITUTION UNDER ITS JURISDICTION INCLUDING CARL ROBINSON CORRECTION AND NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

9.) DEFENDANT, DAVID MAIGA, IS THE DIRECTOR OF CLASSIFICATION AND POPULATION MANAGEMENT FOR THE CONNECTICUT DEPARTMENT OF CORRECTIONS AND IS LEGALLY RESPONSIBLE FOR THE PLACEMENT OF OFFENDERS IN THE DEPARTMENT AND EACH INSTITUTION UNDER ITS JURISDICTION INCLUDING CARL ROBINSON CORRECTIONS AND NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

10.) DEFENDANT, ANTONIO SANTIAGO, IS THE DIRECTOR OF SECURITY FOR THE DEPARTMENT OF CORRECTIONS OF CONNECTICUT AND IS LEGALLY RESPONSIBLE FOR MAINTAINING THE SAFETY AND SECURITY OF BOTH THE INMATE POPULATION AS WELL AS THE CORRECTIONAL OFFICERS WITHIN THE DEPARTMENT AND EACH INSTITUTION UNDER ITS JURISDICTION INCLUDING CARL ROBINSON CORRECTIONAL INSTITUTION AND NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

11.) DEFENDANT, ZELYNETTE CARON, IS THE WARDEN OF CARL ROBINSON CORRECTIONAL INSTITUTION. SHE IS LEGALLY RESPONSIBLE FOR THE OPERATION OF CARL ROBINSON CORRECTIONAL INSTITUTION AND FOR THE WELFARE OF ALL THE INMATES AND EMPLOYEE'S IN THAT PRISON. SHE IS BEING SUED IN HER INDIVIDUAL AND OFFICAL CAPACITY

12.) DEFENDANT, ROGER BOWLES, IS THE WARDEN OF NORTHERN CORRECTIONAL INSTITUTION, A SUPERMAXIMUM SECURITY PRISON IN CONNECTICUT. HE IS LEGALLY RESPONSIBLE FOR THE OPERATION, SAFETY, AND SECURITY OF NORTHERN, AND THE WELFARE OF ALL THE INMATES AND EMPLOYEE'S OF THAT PRISON. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY.

13) DEFENDANT, MANGIAFICO, IS THE COUNSELOR SUPERVISOR OF CONNECTICUTS SUPERMAXIMUM SECURITY PRISON, NORTHERN CORRECTIONAL INSTITUTION. SHE IS LEGALLY RESPONSIBLE FOR CLASSIFICATION OF INMATES PLACEMENT IN NORTHERN CORRECTIONAL INSTITUTION. SHE IS BEING SUED IN HER INDIVIDUAL AND OFFICAL CAPACITY.

14.) DEFENDANT, OULLETTE, IS A CORRECTIONAL OFFICER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS, WHO, AT ~~THE~~ ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF LIEUTENANT AND WAS ASSIGNED TO CARL ROBINSON CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

15.) DEFENDANT, GRIMALDI, IS A CORRECTIONAL OFFICER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF LIEUTENANT AND ACTED AS DISCIPLINARY HEARING OFFICER, ASSIGNED TO NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

16.) DEFENDANT, RAMIREZ, IS A CORRECTIONAL OFFICER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF INTELLIGENCE PHONE MONITOR AND WAS ASSIGNED TO CARL ROBINSON CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

17.) DEFENDANT, CANALES, IS A CORRECTIONAL OFFICER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT HELD THE RANK OF INTELLIGENCE OFFICER AND WAS ASSIGNED TO CARL ROBINSON CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

18.) DEFENDANT, LAPREY, IS A CORRECTIONAL OFFICER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF INTELLIGENCE OFFICER, AND WAS ASSIGNED TO ADVISOR FOR DISCIPLINARY HEARING. OFFICER LAPREY IS ASSIGNED TO NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

19.) DEFENDANT, CIEBOTER, IS A CORRECTIONAL OFFICER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF OFFICER AND WAS ASSIGNED TO NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

20.) DEFENDANT, LEONE, IS A CORRECTIONAL OFFICER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS, WHO AT ALL TIMES MENTIONED IN THIS COMPLAINT, HELD THE RANK OF DISCIPLINARY REPORT INVESTIGATOR. AND WHOS ASSIGNED TO NORTHERN CORRECTIONAL INSTITUTION. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICAL CAPACITY

# IV. FACTS

21.) ON MARCH THIRTEENTH 2020, THE CARL ROBINSON CORRECTIONAL INSTITUTION (C.R.C.I.) WAS PLACED ON LOCKDOWN BY WARDEN ZELYNETTE CARON, DUE TO THE OUTBREAK OF COVID-19. DURING THIS TIME WARDEN CARON TOURED THE FACILITY TO EXPLAIN THE SITUATION, AT WHICH TIME, MYSELF AND OTHER INMATES BROUGHT FOURTH QUESTIONS ON THE MANAGING OF THE FACILITY, ISSUES LIKE SANITARY CONDITIONS OF CONFINEMENT AND WHETHER OR NOT CORRECTIONAL STAFF WOULD BE QUARANTINED ON-SITE AS WELL. I ASKED HER IF SHE COULD RESOLVE A ISSUE WITH THE LAUNDRY DUE TO THE FACT OUR CLOTHES WERE COMING BACK DIRTIER THAN WHEN WE PUT THEM IN. SHE LEAD THE DORM TO BELIEVE "THE WATER IS WHAT WAS DIRTY." I ALSO ASKED WHY OUR VISITS WERE BEING CUT OFF, WHEN OFFICERS WERE ALLOWED TO GO HOME. TO WHICH SHE (WARDEN CARON) REPLIED "THEY HAVEN'T BROKEN THE LAW." HER RESPONSES TOWARDS OUR CONCERNS OF THE UNSANITARY CONDITIONS OF CONFINEMENT IN 3B UNIT OF CRCI (BLACK MOLD, FLOODING IN THE BATHROOM, UNCLEAN FLOORS, BUNKS, ETC.) ONLY FURTHER EMPATHSIZED AND CULTIVATED A DIVIDE BETWEEN INMATES AND CORRECTIONAL OFFICERS. SHE PROMISED BLEACH AND SUPPLIES TO CLEAN OUR BUNKS AND SURROUNDING AREA. SHE SAID SHE'D REMEDY THE UNCLEAN DORM WHICH HOUSED NINETY INMATES.

22.) AFTER WAREN ZELYNETTE CARON FINISHED TOURING AND INFORMING THE INMATE POPULATION, WE DID NOT SEE HER AGAIN. DURING THE DAYS FOLLOWING HER FIRST VISIT, WE RECIEVED NO BLEACH, NO CLEANING SUPPLIES, NOR WERE WE GIVEN THE ABILITY TO CLEAN OUR BUNKS. OUR DORM WAS SWEPT AND MOPPED BY A SELECT GROUP OF INMATES WHO HAD NO VESTED INTEREST IN THE HYGENIC UPKEEP OF THE DORM ENVIRONMENT. A SIMPLE VISUAL INSPECTION EASILY WOULD HAVE SHOWN THE GROSS NEGLIGENCE AND SHEER INCOMPETENCE THAT RAN RAMPANT IN CARL ROBINSON C.I. UNDER WARDEN CARON. MULTIPLE INMATES INCLUDING MYSELF, ASKED MANY GUARDS, LIEUTENANTS, CAPTAINS AND EVEN

THE COUNSELOR ABOUT OUR ACCESS TO BLEACH AND WHY THE DORM WAS STILL COMPLETELY FILTHY, DESPITE MULTIPLE "KICK OUTS" WHICH WE WERE SENT AS AN ENTIRE DORM, ONE HUNDRED AND EIGHTY INMATES, TO THE GYM, SO INMATES FROM ANOTHER DORM CAN CLEAN WHAT WE COULD HAVE EASILY DONE OURSELVES THE COMMON RESPONSE TO OUR INQUIRIES WERE MOSTLY THE SAME, THEY CLAIMED THAT THEY "WERE UNDER THE IMPRESSION WE WERE RECEIVING CLEANING AGENTS." EVEN THOUGH THESE QUESTIONS PERSISTED, CLEANING SUPPLIES WERE STILL NOT GIVEN TO INMATES.

23.) FROM THE ONSET OF THE LOCKDOWN ON MARCH THIRTEENTH 2020 TO THE DAY OF THE DORM'S REFUSAL OF A SINGLE MEAL ON APRIL FIRST 2020, HOSTILITIES BETWEEN THE INMATE POPULATION AND PRISON ADMINISTRATION BECAME EXTREMELY PALPABLE. OUR FOOD TRAYS WERE BROUGHT TO THE BOTTOM OF THE STAIRS OUTSIDE OUR DORM. OUR TRAYS WERE OPENED OUTSIDE IN THE ELEMENTS, SOMETIMES IT SNOWED IN OUR FOOD SOMETIMES IT RAINED ON OUR FOOD DESPITE OUR PROTESTS. THE DORM BATHROOM REMAINED FLOODED. THE DORM REMAINED UNCLEAN. INMATES WERE QUARANTINED ON COMPOUND WHILE I WAS THERE. UPON BELEIF, CORRECTIONAL OFFICERS ALSO CONTRACTED COVID-19 AND WERE OUT "SICK".

24.) AFTER THREE WEEKS OF NEGLECTING THE SANITATION NEEDS OF DORM 3B OF C.R.C.I., TENSION WAS HIGH BETWEEN INMATES AND PRISON GUARDS. THIS WAS BECAUSE OF THE CALLOUS INDIFFERENCE TOWARDS THE PLIGHT OF THE INCARCERATED, THAT ON APRIL FIRST 2020, ANIMOSITY ALMOST CAUSED A RIOT IN 3B, OVER AN INMATE BEING BROUGHT TO SEGREGATION FOR GETTING A CUP OF WATER AND NOT GETTING ON HIS TOP BUNK FAST ENOUGH. I WAS GETTING WATER AFTER THIS INMATE AND WAS THE LAST PERSON IN THE DAYROOM WHERE THE HOT POT WAS LOCATED. UPON LEAVING

THE DAYROOM, I NOTICED BOTH CORRECTIONAL OFFICERS POINTING AT SOMEONE IN THE DORM. AT THE TIME I THOUGHT NOTHING OF THIS AND CONTINUED TOWARDS MY BUNK. WHEN I GOT TO MY ASSIGNED BUNK THE BLOCK OFFICERS CAME IN AND CONFRONTED THE INMATE THEY WERE APPARENTLY POINTING AT. A SIGNAL ELEVEN WAS CALLED, WHICH IS A CODE FOR A FLAGRANT DISOBEDIANCE OR COMBATIVE INMATE. THIS CAUSED MANY CORRECTIONAL OFFICERS AND A FEW LIEUTENANTS TO RUSH OUR DORM. THIS WAS AT APPROXIMATELY 2:30 PM TO 3:00 PM APRIL FIRST. INMATES AND OFFICERS BEGAN ARGUEING AND TENSIONS WERE HIGH, I COULD BE SEEN HOLDING AN INMATE BACK FROM GETTING INTO IT WITH THE OFFICERS. WE TRIED TO EXPLAIN TO STAFF THAT THE INMATE DID NOTHING WRONG, I EVEN TOLD THEM I WAS THE LAST INMATE IN THE DAYROOM SO I ASK "WHY AM I NOT BEING TAKEN TO SEG AS WELL?" OUR PROTESTS WENT UNHEARD.

25.) AT AROUND 4:00PM APRIL FIRST 2020, ALL INMATES IN 4A, 4B, 3A AND MY DORM 3B REFUSED DINNER. THE DORM I WAS PLACED IN WAS A SCHOOL/ JUST RELEASED FROM SEGREGATION DORM. A VAST MAJORITY OF THE INMATES IN MY DORM WERE YOUNGER THAN TWENTY-FIVE, THESE INMATES WANTED TO GET ADMINISTRATIONS ATTENTION THROUGH MALICIOUS MEANS. I ADVISED AGAINST AGGRESSION. I TOLD THEM (THE INMATES) THAT VIOLENCE WOULDN'T GET US ANY FURTHER, ONLY OPENING A LINE OF COMMUNICATION WOULD CORRECT THE ISSUES AT HAND. DURING THIS TIME ONE LIEUTENANT, LT. OULLETTE, OF THE INTELLIGENCE UNIT, STAYED IN THE DORM. AS WE INMATES ARGUED OVER THE BEST METHOD OF REMEDYING THE DORMS UNSANITARY & CONDITIONS OF CONFINEMENT, MY ARGUEMENT FOR COMMUNICATION WON OUT. I DRAFTED A SMALL NOTE OF POINTS OR TOPICS WE NEEDED TO DISCUSS, MY FIRST DRAFT I DISCARDED BECAUSE I BELIEVED THE WORD COULD BE MISINTERPETED. I GAVE THE SECOND DRAFT TO A GUARD WHO IN

TURN BROUGHT IT OVER TO LIEUTENANT OULLETTE. HE (LT. OULLETTE) TOOK HIS CELL PHONE OUT, TOOK PICTURES OF THE NOTE AND MAINTAINED TO WATCH THE DORM. I DID THIS IN FRONT OF EVERYONE IN THE DORM AND KEPT THE YOUNGER INMATES FROM ERUPTING INTO FRENZIED VIOLENCE. WHILE WE WAITED FOR THE WARDEN TO COME BACK TO OUR DORM, INMATES KEPT VENTING THEIR FRUSTRATIONS TO ME, I KEPT TRYING TO MAINTAIN CALM AND CIVILITY, WHILE LIEUTENANT OULLETTE STOOD THERE AND WATCHED.

26.) AT AROUND 4:30PM ON APRIL FIRST 2020, WARDEN ZELYNETTE CARON WAS SEEN THROUGH THE DORM WINDOWS HEADING OUR DIRECTION. INMATES IN MY UNIT ASKED FOR ME TO SPEAK ON THEIR BEHALF ON THE ACCOUNT I CAN ARTICULATE MYSELF TO A DEGREE SLIGHTLY BETTER THAN THE REST. I AGREED ON THE CONTINGENCY THAT THEY REMAIN CALM AND PEACEFUL. THIS ALSO OCCURED IN FRONT OF LT. OULLETTE. WHEN WARDEN CARON ENTERED OUR DORM I TOLD HER OF OUR FRUSTRATIONS ABOUT THE UNSANITARY LIVING CONDITIONS AND UNFAIR TREATMENT AT THE HANDS OF OFFICERS. I BROUGHT UP THE FACT THAT THE DORM ALMOST RIOTED OVER THE INMATE BEING BROUGHT TO SEG. I ASKED HER TO LOOK INTO THIS, WHAT I FELT UNJUST TREATMENT. I TOLD HER WE WERE NOT RECEIVING BLEACH NOR GIVEN THE ABILITY TO CLEAN OUR BUNKS. SHE CLAIMED THIS WAS BECAUSE "INMATES DRINK BLEACH" SHE SAID THE FACILITY DID NOT KNOW WHAT TO DO, THAT THE VIRUS IN PRISON WAS "UNPRECEDENTED" AND I RESPONDED THAT ADMINISTRATIVE DIRECTIVE 7.8 IS MANAGEMENT OF A PANDEMIC OUT BREAK. WARDEN CARON SAID SHE "DIDN'T KNOW THE DIRECTIVE." I THEN SAID SHE COULD REFER TO ADMINISTRATIVE DIRECTIVE 2.25 MRSA PREVENTION AND MANAGEMENT PROTOCOL FOR EMPLOYEES, WHICH SHE CLAIMED ALSO NOT

TO KNOW. I AGAIN EXPRESSED OUR FRUSTRATION OVER OUR INABILITY TO CLEAN OUR BUNK AREAS AND ASKED WHY WE COULDN'T HAVE ACCESS TO BLEACH, SHE AGAIN RESPONDED WITH "INMATES ARE DRINKING IT," I THEN POINTED OUT SHE COULD HAVE AN OFFICER WALK AROUND WITH A SPRAY BOTTLE TO ACCOMIDATE OUR NEEDS. AT THAT SHE REMAINED QUIET. DEPUTY WARDEN KENNY SAID THEY COULD MAKE THAT HAPPEN, I SPOKE WITH HIM ABOUT THE LUANDRY ASKING WHY OUR CLOTHES WERE STILL FILTHY. HE SAID HE'D LOOK INTO IT. OTHER INMATES CAME FORWARD AND ASKED ABOUT THE BLACK MOULD AROUND THE WINDOWS AND FLOODED BATHROOM. THE CONVERSATION WAS ENDED AND THE ADMINISTRATIVE STAFF OF CRCI LEFT TO GO TO DORM 3A.

27.) ONCE THE ADMINISTRATIVE STAFF LEFT MY DORM BEGAN TO COOK OUR COMMISSARY FOOD NORMAL MOVEMENT ON MODIFIED LOCKDOWN RESUMED, AND CORRECTIONAL OFFICER LAWERANCE WALKED AROUND WITH A SPRAY BOTTLE OF BLEACH, WHICH AS SIMPLE VIEWING OF DORM CAMERAS WILL SHOW THE MAJORITY OF THE DORM CLEAN THEIR BUNK AREAS.

28.) ON APRIL SECOND 2020, THE INMATES OF BOTH BUILDINGS, 3 AND 4, ATE BREAKFAST, MASKS WERE HANDED OUT, WE HAD LUNCH AND DINNER. NO ISSUES OCCURED.

29.) ON APRIL THIRD 2020, AT AROUND TEN IN THE MORNING, I WAS CALLED TO THE ACTIVITIES BUILDING. ONCE I ENTERED THE BUILDING I NOTICED FIFTEEN CORRECTIONAL OFFICERS ON MY LEFT AND FIFTEEN CORRECTIONAL OFFICERS ON MY RIGHT, ALONG WITH K-9'S. I ASKED WHAT'D I DO? MULTIPLE TIMES AND RECEIVED NO RESPONSE. I WAS PATTED DOWN AND BEING PLACED IN WHATS KNOWN TO ME AS "CHUBB CUFFS." AS THIS WAS GOING ON AN UNKNOWN OFFICER REACHED FOR MY MEDICINE BAG, I PROTESTED

VERBALLY TO LIEUTENANT OULLETTE WHICH HE IN TURN GAVE A HEAD NOD TO OFFICER JOHN DOE WHOM PROCEEDED TO VIOLATE MY RELIGIOUS RIGHTS OPENING MY MEDICINE BAG WITHOUT MY PERMISSION. IT SHOULD BE NOTED THAT I COULD BE SEEN ON INCIDENT CAMERA FOOTAGE CALM AND COMPLIANT, ASKING WHAT DID I DO, BEING PHYSICALLY ASSUALTED, FORCIBLY MOVED FROM CARL ROBINSON CORRECTIONAL INSTITUTION TO NORTHERN CORRECTIONAL INSTITUTION, PER ORDER BY WARDEN ZELYNETTE CARON AND DIRECTOR OF POPULATION MANAGEMENT DAVID MAIGA.

30) UPON ARRIVAL TO NORTHERN CORRECTIONAL SUPERMAXIMUM SECURITY PRISON, I WAS PUT THROUGH A "THREE POINT STRIP SEARCH" WHERE TWO C.O.'S HOLD AN ARM A PEICE, AND A THIRD PHYSICALLY STRIPS MY CLOTHES OFF MY BODY ARTICLE BY ARTICLE. I WAS THEN REDRESSED BY THE OFFICER PLACED IN SHACKLES AND CUFFS WITH A TETHER CHAIN AND ESCORTED TO UNIT ONE WEST, CELL 118. MY PROPERTY KEPT FROM ME. I WAS TOLD ON SUNDAY I WAS ON ADMINISTRATIVE DETENTION. I HAD YET TO RECEIVE A DISCIPLINARY REPORT, WHICH I WOULD GET ON SUNDAY. MY DISCIPLINARY REPORT (D.R.) WAS DATED 4.4.2020 WHICH AT THAT TIME I HAD ALREADY BEEN SITTING IN NORTHERN.

31.) MY D.R. WAS WRITTEN BY C.O. CANALES EVEN THOUGH THE INVESTIGATING OFFICER WAS LT. OULLETTE - A DIRECT VIOLATION OF THE ADMINISTRATIVE DIRECTIVES. 9.5 10.b.i.1

32.) THE DEPARTMENT OF CORRECTIONS ALLOWS THESE "INTELLIGENCE" OFFICERS TO "INVESTIGATE" SUPPOSED INCIDENTS THAT OCCUR IN THE DEPARTMENT. THESE INTEL OFFICERS HAVE VERY LITTLE OVERSIGHT. THE ACTIONS IRRESPONSIBLY TAKEN SHOWS THE MYOPIC AND CAVALIER ATTITUDE THE ADMINISTRATION UNDER WARDEN ZELYNETTE CARON HAD TOWARDS INMATES AS MY D.R. GRIEVENCE SHOWS, I WAS PLACED IN THE SUPERMAX DUE TO A LETTER SENT BY WARDEN ZELYNETTE

CARON ON THE DATE OF APRIL SEVENTH 2020. THIS LETTER WOULD LATER BE USED TO JUSTIFY MY PLACEMENT IN ADMINISTRATIVE SEGREGATION.

33.) MY D.R. WAS FOR IMPEDING ORDER, STATING THAT I ORCHESTRATED A HUNGER STRIKE ON 4.1.2020. THE D.R. WAS (AGAIN) INVESTIGATED BY LT. OULLETTE AND DRAFTED BY C.O. CANALES. THEY CITE PHONE CALLS LISTENED TO BY C.O. RAMIREZ OF THE INTEL UNIT AND CAMERA FOOTAGE, AS EVIDENCE USED TO VIOLATE MY FREEDOM OF SPEECH, AND RIGHT TO PETITION...... FOR A REDRESS OF GRIEVENCES. I TOOK SAID D.R. TO TRIAL.

34.) THE INVESTIGATION C.O. LEONE, THE D.R. INVESTIGATOR TOOK ALMOST TWO MONTHS, THERE WAS AN EXTENSION, I WAS LED TO BELIEVE, WAS DUE TO COVID-19. THE ENTIRE TIME I WAS HELD IN A LEVEL FIVE SECURITY PRISON. I WAS FORMALLY A LEVEL TWO INMATE, THE LOWEST LEVEL ONE CAN BE WHILE STILL INCARCERATED WHILE IN CONNECTICUTS DEPARTMENT OF CORRECTIONS. I WAS ON AN OPEN COMPOUND WITH FREEDOM OF MOVEMENT, THEN CRUELLY PLACED IN CHAINS AND SHACKLES IN ISOLATION, I WAS PLACED WITH A CELL MATE EVEN THOUGH AS A LEVEL 5 INMATE, I WAS SUPPOSED TO BE IN A SINGLE CELL. THIS CREATED A HOSTILE, UNCOMFORTABLE SITUTATION IN WHICH MY ONLY RESPITE WAS MY SHOWER TIME. I WAS IN A CELL SEVEN FEET BY TWELVE FEET WITH ANOTHER LEVEL FIVE INMATE IN ISOLATION CREATING SIMULTAIOUS OVERCROWDING AND ISOLATION. I HAVENT BEEN ABLE, DESPITE MULTIPLE ATTEMPTS, TO SEE MENTAL HEALTH.

35.) ON APRIL TWENTYSECOND 2020, I WAS APPOINTED OFFICER LA PREY AS AN ADVISOR. ON APRIL TWENTY SEVENTH 2020, HE CLAIMS TO HAVE REVIEWED THE CAMERA FOOTAGE THEN HE SAYS HE DIDN'T CHECK IT AFTER. SEE ADVISOR REPORT ON 9508/2. THIS ACTION VIOLATES MY PROCEDURAL DUE PROCESS AS WELL AS MY RIGHT TO PETITION FOR REDRESS OF GRIEVENCES.

36.) AFTER A FULL FORTY DAYS AFTER I WAS PLACED IN ADMINISTRATIVE DETENTION, I WAS FOUND GUILTY BY D.R. INVESTIGATOR LEONE AND DISCIPLINARY HEARING OFFICER (DHO) LIEUTENANT GRIMALDI, WHO SAID HE'S "NOT FINDING ME GUILTY OF THE FACTS, BUT RATHER OF MY STANDING IN THE INMATE COMMUNITY". MY ADVISOR LAPREY DID NOT BOTHER TO SHOW UP FOR THIS MEETING, OFFICER CIEBOTER SAT IN HIS WAKE. THE SAME WORDS I SPOKE IN THIS "HEARING", I USED IN MY D.R. APPEAL WHICH I FILED IMMEDIATELY, SEE CN9602 INMATE REMEDY FORM.

37.) ON MAY EIGHTEENTH 2020, I HAD MY ADMINISTRATIVE SEGREGATION (A.S.) HEARING. HEARING OFFICER E. TUGIE AND COUNSELOR R. RICCIO HEARD MY ARGUEMENT AGAINST THE DELIBERATE INDIFFERENCE PRESENTED TOWARDS VIOLATING MY RIGHTS. SEE CN9404/1 AND CN9404/2. CN6609 SHOWS MY ARGUEMENT, AS SHOULD THE VIDEO FOOTAGE FROM SAID VIDEO CONFERENCE.

38.) ON MAY TWENTY-SIXTH 2020 I WAS RECOMMENDED AGAINST A.S. PLACEMENT BY E. TUGIE. DAVID MAIGA THE DIRECTOR OF OFFENDER CLASSIFICATION AND POPULATION MANAGEMENT, PLACED ME IN A.S. ANYWAY. AS STATED ON CN9404/2 IT STATES "INFORMATION RELIED ON: LETTER DATED APRIL, 7 2020 FROM WARDEN CARON TO DAVID MAIGA AND INCIDENT REPORT PACKAGE CRCI-2020-04-003." IT IS ALSO STATED IN CN9404/1. I APPEALLED THIS DESICISION IMMEDIATELY

39.) RECIEVING MY PAPERS FROM MY D.R. AND A.S. HEARINGS I NOTICED THE INCONSISTANCIES, I FILED MY D.R. APPEAL WHICH I RECIEVED BACK TUESDAY JULY FOURTEENTH 2020. MY D.R WAS OVERTURNED BY DISTRICT ADMINI STRATOR NICK RODRIGUEZ.

40.) I ALSO NOTED MISSING PROPERTY, INCLUDING RELIGIOUS ITEM, WHICH WAS LAST SEEN IN CARL ROBINSON CORRECTIONAL.

41.) INMATE WILSON WAS HOUSED IN NORTHERN SUPERMAX UNTIL SEPTEMBER 22 2020. AT WHICH POINT HE WAS TRANSFERED TO GARNER CORRECTIONAL INSTITUTION IN NEWTOWN CONNECTICUT. HE IS STILL IN ADMINISTRATIVE SEGREGATION DESPITE THE FACT THAT THE D.R. USED TO PUT MR. WILSON IN A.S. WAS LATER OVERTURNED ON APPEAL. INMATE WILSON WAS A LEVEL TWO AT THE TIME ALLEGATIONS WERE MADE BY WARDEN CARON, LIEUTENANT OULLETTE, C.O. CANALES, AND C.O. RAMIREZ, THEIR ACTIONS TO SILENCE MR. WILSON OVER THE HANDLING OF THE COVID-19 VIRUS WITHIN THE CARL ROBINSON COMPOUND WERE RETALITORY BY NATURE AND CONDUCT. WHICH FURTHER VIOLATED INMATES CONSTITUTIONAL RIGHTS. THE DISCIPLINARY HEARING FURTHER SHOWS THE DELIBERATE INDIFFERENCE AND CALLOUS DISREGUARD FOR INMATES AND CORRECTIONAL STAFF ATTRIBUTED TO THE ATMOSPHERE ALLOWED TO PERSIST IN THE DEPARTMENT OF CORRECTIONS. ALL STAFF IN ADMINISTRATIVE POSITIONS WERE EITHER GROSSLY NEGLIGENT IN THEIR AUTHORITY POSITIONS OR DELIBERATLY INDIFFERENT TO THE EXTREME KNEE-JERK REACTION TOWARDS PLACING INMATE WILSON IN A.S., THE DEPARTMENT AS A WHOLE HAS FAILED TO SHOW WHY OR HOW THE INMATE IS A THREAT TO SAFETY AND SECURITY. THEY ATTEMPT TO COVER-UP THE ISSUE BY TRANSFERING, DURING A PANDEMIC HUNDREDS OF INMATES AND OFFICERS FROM CARL ROBINSON. MY APPEAL AGAINST MY AS. PLACEMENT WAS REJECTED FOR A TECHNICALITY OF ONE SHEET OF PAPER.

42.) INMATE WILSON HAS SEVERE MENTAL HEALTH ISSUES AND HAS EXTENSIVE HISTORY OF STRUGGLING WITH MANIC DEPRESSIVE, BIPOLAR DISORDER, POST TRAUMATIC STRESS DISORDER, ANTI-SOCIAL PERSONALITY DISORDER AND ANXIETY DISORDER. MR. WILSON HAS WORKED ON MAINTAINING A CALM DISPOSITION AND TRIES TO KEEP HIS MENTAL HEALTH FROM DEGRADING. INMATE WILSON HAS NOT HAD AN EPISODE OR CRISIS IN YEARS DUE TO PERSISTANCE AND COGNATIVE BEHAVIORAL THERAPY. THE ATMOSPHERE IN NORTHERN C.I. IS KNOWN TO DETERIORATE SUCH PROGRESS, AS DOES ISOLATION TECHNIQUES LIKE ADMINISTRATIVE SEGREGATION.

## V. EXHAUSTION OF LEGAL REMEDIES

43.) PLAINTIFF JONATHAN WILSON USED THE INMATE ADMINISTRATIVE REMEDY FORMS GRIEVENCE PROCEDURE AVAILABLE AT NORTHERN SUPERMAX TO TRY TO SOLVE THE PROBLEM ON 5·13·2020 (D.R.) AND 5·29·2020 (AS.) PLAINTIFF JONATHAN WILSON PRESENTED THE FACTS RELATING TO THIS COMPLAINT ON JULY EIGHTH 2020 PLAINTIFF WAS SENT A RESPONSE SAYING GRIEVENCE OF AS PLACEMENT HAS BEEN DENIED. DEPUTY DIRECTOR WILLIAM MULLIGAN CHECKED THE EXHAUSTION BOX. ATTEMPTS TO GAIN FURTHER INFORMATION, BY PLAINTIFF, VIA THE FREEDOM OF INFORMATION ACT, IN REGARDS TO INCIDENT REPORTS AND THE LETTER USED TO PLACE ME IN AS. HAS RESULTED IN DENIALS BY THE CARL ROBINSON COMPOUND. THEY (CRCI) HAS GONE SO FAR TO SAY "NO DOCUMENTS RESPONSIVE TO THIS REQUEST WERE FOUND. THIS COMPLETES YOUR REQUEST PERTAINING... TO THE LETTER. WHICH LEAVES ME TO BELEIVE THE COVER-UP OF WRONGDOINGS WITHIN CARL-ROBINSON.

## VI LEGAL CLAIMS

44.) PLAINTIFF JONATHAN WILSON REALLEGES AND INCORPORATES BY REFERENCE PARAGRAPHS 1-43. ALL DEFENDANTS, NAMED AND UN-NAMED, AND THOSE LISTED ABOVE, HAVE ACTED SEPERATLY AND/OR IN CONCERT, TO DEPRIVE THE CONSTITUTIONAL RIGHTS OF THE PLAINTIFF, AND WERE ACTING AS OFFICALS OF THE STATE OF CONNECTICUT DEPARTMENT OF CORRECTION, AND ALL WERE ACTING "UNDER COLOR OF LAW" AND UNDER COLOR OF THEIR AUTHORITY AS OFFICALS OF THE CONNECTICUT DEPT. OF CORRECTIONS,

45.) THE TRANSFERING AND PLACEMENT INTO ADMINISTRATIVE SEGREGATION, ISSUANCE OF THE DISCIPLINARY REPORT, VIOLATED PLAINTIFFS JONATHAN WILSON'S RIGHTS AND CONSTITUTED A VIOLATION OF THE FIRST, FIFTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATE'S CONSTITUTION, AND A VIOLATION OF 42 U.S.C. SECTION 1983.

46.) THE PLAINTIFF HAS NO PLAIN, ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DESCRIBED HEREIN. PLAINTIFF HAS BEEN AND WILL CONTINUE TO BE IRREPARABLY INJURED BY THE CONDUCT OF THE DEFENDANTS UNLESS THE COURT GRANTS THE DECLARATORY AND INJUNCTIVE RELIEF WHICH PLAINTIFF SEEKS.

## VII PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT THIS COURT ENTERS JUDGEMENT GRANTING PLAINTIFF;

47.) A DECLARATION THAT THE ACTS AND OMISSIONS DESCRIBED HEREIN VIOLATED PLAINTIFF'S RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES.

48.) A PRELIMINARY AND PERMANANT INJUNCTION ORDERING DEFENDANTS DEPARTMENT OF CORRECTIONS, ANGEL QUIROS, CHERYL CEPELAK, WILLIAM MULLIGAN AND DAVID MAIGA TO CREATE A MORE COMPREHENSIVE PANEL TO OVERSEE THE DISCIPLINARY PROCESS AND GRIEVENCE PROCEDURE, AS WELL AS A PANEL OF IMPARTIAL INDIVIDUALS TO OVERSEE ADMINISTRATIVE SEGREGATION PLACEMENT, INCLUDING ONE MENTAL HEALTH PROFESSIONAL.

49.) A PRELIMINARY AND PERMANANT INJUNCTION ORDERING DEFENDANTS LT. OULLETTE, C.O. CANALES AND RAMIREZ TO TAKE RELIGIOUS SENSITIVITY TRAINING, AND FOR LT. OULLETTE TO BE REMOVED FROM INTELLIGENCE UNIT AND RANK REMOVED.

50.) A PRELIMINARY AND PERMANANT INJUNCTION ORDERING DEFENDANTS CONNECTICUT DEPARTMENT OF CORRECTIONS TO REMOVE PLAINTIFF FROM A.S., AND RESTORE ALL PROPERTY TAKEN OR LOST IN TRANSIT.

51.) COMPENSATORY DAMAGES IN THE AMOUNT OF $100,000.00 AGAINST EACH INDIVIDUAL DEFENDANT, JOINTLY AND SEVERALLY. COMPENSATORY DAMAGES ARE SOUGHT IN ORDER TO REMEDY AND REDRESS THE LOSSES AND DAMAGES INFLICTED UPON THE PLAINTIFF THAT ARE NOT OTHERWISE REMEDIED OR POSSIBLE ~~TO REM~~ FROM NON MONETARY DAMAGES AS WELL TO ENSURE NO FUTURE ACTIONS OF THE COMPLAINT OCCURS AGAIN.

52.) PUNITIVE DAMAGES IN THE AMOUNT OF $75,000.00 AGAINST EACH DEFENDANT, SOUGHT FOR REDRESS AND TO DETER FURTHER AND FUTURE RECKLESS AND CALLOUS INDIFFERENCE TO THE PLAINTIFFS RIGHTS. ALL NON MONETARY IS SOUGHT TO APPROPRIATELY REMEDY AND RESTORE ALL DAMAGES OF WHICH IS NOT OTHERWISE POSSIBLE AND/OR APPROPRIATE FROM MONETARY DAMAGES SOUGHT.

53) PUNITIVE DAMAGES IN THE AMOUNT OF $175.00 PER DAY SPENT IN ADMINISTRATIVE SEGREGATION. SOUGHT TO REMEDY AND REDRESS LOSSES AND DAMAGES DONE/INFLICTED UPON THE PLAINTIFF THAT ARE OTHERWISE NOT REMEDIED, ALSO, TO DETER FUTURE ACTIONS OF A LIKEWISE NATURE WHICH GAVE RISE TO THIS CLAIM.

54.) PURSUANT TO CONNECTICUT GENERAL STATUTES § 52-278 (a)(b) THE PLAINTIFF RESPECTFULLY REQUESTS A SECURITY LIEN PLACED UPON THE ASSETS AND/OR PROPERTIES OF EACH DEFENDANTS TO ENSURE COMPENSATORY AND PUNITIVE RELIEF.

55.) A JURY TRIAL ON ALL ISSUES TRIABLE BY JURY

56.) PLAINTIFFS COSTS IN THIS SUIT

57.) ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER AND EQUITABLE.

DATED: 9·26·2020

RESPECTFULLY SUBMITTED

JONATHAN WILSON #293609
GARNER CORRECTIONAL INSTITUTION
50 NUNNAWAUK RD. NEWTOWN, CT.
06470

VERIFICATION

I HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED ON INFORMATION AND BELIEF, AND AS TO THOSE, I BELIEVE THEM TO BE TRUE. I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED AT NEWTOWN, CONNECTICUT ON SEPTEMBER 26.2020

[signature]

JONATHAN WILSON